## L. J. MUELLER FURNACE CO. v. GROESCHEL.

(Circuit Court, E. D. Wisconsin. January 19, 1909.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HOT-AIR REGISTERS.

The Mueller patent No. 746,355, for a wall register for use in connection with hot-air furnaces, was not anticipated, and discloses invention, and although a secondary one covers a distinct improvement on the prior art and is entitled to a fair range of equivalents. Also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 22*)—INFRINGEMENT—SUBSTITUTION OF MECHANICAL EQUIVALENTS.

A weight and a spring, generally speaking, are mechanical equivalents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

In Equity. On final hearing.

Winkler, Flanders, Bottum & Fawcett, Sol., for complainant.
Erwin & Wheeler, Sol., for defendant.

SANBORN, District Judge. Suit in equity for injunction and account for infringement of letters patent No. 746,355, issued to L. J. Mueller December 8, 1903, for an improved wall register used in connection with hot-air furnaces. Defendant denies invention and novelty, denies infringement, alleges anticipation by 24 prior patents

specifically referred to, also alleges prior public use and common gen·eral knowledge for two years before application.

The main question may be illustrated by supposing that an ordinary bound book represents the register. If the book is placed on a table with the back in a horizontal position, and the covers perpendicularly resting on the table, the covers will represent the movable damper or register lid, and the printed matter the fixed portion, frame, or grill of the register. If a cover is raised and lowered, and held in different positions, it will practically represent the movable damper of both devices, hinged to the book by the flexible binding. The aim of both parties in the construction of their several devices was to attach to the damper or movable lid near the top or angle· with the frame a small fixture called an "operating piece," and bring it through the fixed portion, frame, or grill of the register so as to bind against or rest upon a part of the frame or grill serving as a bearing. The frictional resistance of the operating piece in plaintiff's device holds the damper in any desired place. In the defendant's the combined weight of the damper and operating piece, resting upon such bearing, secures the same result.

Plaintiff's first claim covers a combination of four things—a frame, a bearing (part of the grill), a damper, and an operating piece. The second claim covers the same things, except that the last is a spring operating piece. The operating piece, about two inches in length, firmly attached to the damper, whether made rigid or elastic, binds against the perpendicular sides of a part of the openwork of the grill, and thus permits the damper to be opened, closed, or held at any angle, so as to regulate the admission of the hot-air current.

Defendant's device also consists of the combination of a frame, bearing, damper, and operating piece, but the latter, instead of pressing by friction against a perpendicular bearing in the grill, and this acting against the weight of the damper, rests by gravity alone upon a bearing consisting of a horizontal portion of the grill. One works against gravity by friction, due either to the rigidity of the operating piece, or to its elasticity or springiness; the other by weight. In some of the registers made by defendant under the Foster patent the operating piece is so attached to the damper that the resilience of the damper presses the piece against the grill or bearing, as well as the weight of itself and the damper. In the actual operation of the registers this difference does not appear to be of much importance. The mode of operation, therefore, of complainant's and defendant's devices is quite distinct, one working against gravity by friction, and the other by gravity alone, or gravity aided by a spring.

However, no matter how great the apparent difference in the mode of operation of these operating pieces, if they are only mechanical equivalents the latter may infringe. As so clearly and expressively stated by Mr. Caldwell, expert witness called by defendant:

"It is a well-accepted principle that in interpreting and applying claims mechanical equivalents are to be treated alike, and there is no clearer example of mechanical equivalency than that which exists between a part which operates by spring force and a part which operates by the force of gravity. In

other words. a weight is to be considered the mechanical equivalent of a spring."

This statement is fully supported by the decisions, and was made by the witness to illustrate his opinion that an operating piece found in the prior art, frictionally held in place by gravity, was mechanically the same as the Mueller device, held in place by a spring operating against gravity.

The doctrine of mechanical equivalents has been stated by the Supreme Court in many cases. In Kokomo Fence Mach. Co. v. Kitselman, 189 U. S. 8, 24, 23 Sup. Ct. 521, 527, 47 L. Ed. 689, 696, it is said:

"The machines lack that identity of means and identity of operation which must be combined with identity of result to constitute infringement."

In Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 702, 49 L. Ed. 1100, 1107, Justice Day says:

"If the device of the respondents shows a substantially different mode of operation, even though the result of the operation of the machine remains the same, infringement is avoided."

"Where the patent does not embody a primary invention, but, only an improvement on the prior art, and the defendant's machines can be differentiated. the charge of infringement is not sustained."

This language from the last case is quoted in the Paper Bag Case, 210 U. S. 405, 413, 28 Sup. Ct. 748, 749, 52 L. Ed. 1122, 1126, where it is further said, quoting from an earlier case:

"The range of equivalents depends upon the nature and extent of the invention. If the invention is broad or primary in its character, the range of equivalents will be correspondingly broad"

—but the doctrine of equivalents may be invoked for all patents, primary or not. In Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017, quoting from Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935, the court say:

"The court or jury are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and to find that one thing is substantially the same as another if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce substantially a different result."

Even if the defendant's device is better than the plaintiff's, this will not relieve it from being an infringement. Cantrell v. Wallick.

In Union Paper Bag Machine Co. v. Murphy, supra, the rule of mechanical equivalents was applied in favor of an invention not primary, but an improvement. The machine operated so as to cut a roll of paper with a falling cutter, guillotine fashion, and was held infringed by a machine substituting for the falling cutter a stationary knife with a serrated edge placed with the edge uppermost, and made to cut the paper by a falling weight forcing the paper against it. It was held that the knife and falling weight performed the same function as the cutter, and performed the same work in substantially the same way, to accomplish substantially the same result.

Defendant's operating piece performs the same function as complainant's; both act to open, shut, and hold in any desired position the valve. But, to be an infringement, it must perform the same function in substantially the same way. Levers and springs are generally equivalents, also springs and weights. Interchangeability is an important test in determining infringement. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. A spiral spring is generally an equivalent for a flat spring. United States v. Berdan Firearms Co., 156 U. S. 552, 15 Sup. Ct. 420, 39 L. Ed. 530. In this case the two operating pieces are not only fully and completely interchangeable, but the situation is such that either a gravity handle or a spring handle will operate with practically equal success on each register. This is also true if the defendant's handle is so joined to the damper as to be pressed against the bearing not only by its own weight and the weight of the damper, but also by the resiliency or spring of the damper as well. So that, whether defendant's registers be made under the Foster patent, in which the element of a resilient damper is an important claim, or be made like "Complainant's Exhibit Defendant's Register," in which the operating piece is held in place by weight alone, it seems clear, if the Mueller patent is valid, it is infringed. It may be further said that defendant's device does not seem to be an improvement on the plaintiff's.

Is the Mueller patent sustainable as a combination of old elements, either producing a new and useful result, or an old result by improved means or in a cheaper and more advantageous way? The prior art is fully explained and applied by Mr. Bates and Mr. Caldwell, expert witnesses on each side. The only invention in the prior art which at all resembles the Mueller device is the Jones patent, No. 699,183, May 6, 1902. Claim 1 of the Mueller patent is readable quite closely on the Jones invention, but not so claim 2. In place of the "spring operating piece" of claim 2, Jones uses a "screw-stem" or screw with a knob or handle working in a "threaded guide." By turning the screw the damper is pushed out or in, and held at the desired angle. The result secured by both designs is the same, but the means by which it is secured in the later patent are new and improved, and the end is reached in a more advantageous way. The Mueller damper can be regulated much more easily and quickly than the other, and can be operated with the foot. Though the Jones and Mueller devices perform the same function, yet they are not equivalents, as they perform it in a substantially different manner.

It is true that the Mueller patent is a secondary one, subject to narrow construction, with a limited range of equivalents. But it was a distinct improvement on the prior art, which can hardly be said of the patent under which defendant's registers, or some of them, are made.

Many other patents in the prior art were put in evidence, but they are much more remote than the Jones patent, which cannot, I think, be properly held an anticipation.

I think complainant entitled to the relief prayed, and a decree is directed accordingly.