**GENERAL ELECTRIC CO. v. MUNDER ELECTRICAL CO. et al.**

No. 4155.

District Court, D. Massachusetts.

Feb. 17, 1938.

292

Howson & Howson, of New York City, Fish, Richardson & Neave and Harrison F. Lyman, all of Boston, Mass., for plaintiff.

Dwight Powers, of Boston, Mass., and Charles J. Holland, of New York City, for defendants.

McLELLAN, District Judge.

This is a suit for infringement of reissue patent No. 18,678, granted December 6, 1932, to Johannes Ostermeier of Althegnenberg, Germany, assignor by mesne assignments to General Electric Company, the plaintiff. The original patent, No. 1,776,637, was granted to Ostermeier on September 23, 1930. The defendants are the Munder Electrical Company, a Massachusetts corporation; Charles F. Munder, receiver of Munder Electrical Company under an order of the superior court of Massachusetts for · Hampden county; Charles F. Munder, Robert V. Munder, and Rushworth I. Munder. The patent in suit is for a flash lamp suitable for photographic purposes. In their answer, the defendants set up numerous defenses, including noninfringement, lack of invention, anticipation by the prior art, invalidity of the reissue proceedings, lack of title in the plaintiff, and estoppel. Of these, the defenses of lack of invention and of invalidity of the reissue proceedings are chiefly stressed.

The following, so far as it contains statements of facts and conclusions of law, may be deemed a compliance with Equity Rule 70½, 28 U.S.C.A. · following section 723.

Since the plaintiff conclusively proved its title to the Ostermeier invention at the trial, no further reference need be made to this issue. It was also shown that the defendants[1] manufactured and sold lamps substantially identical with those of the plaintiff, and no serious attempt was made to controvert infringement at the trial. I pass, therefore, to a consideration of the more difficult question of anticipation and lack of invention.

· The invention in question is a flash lamp designed to permit high speed photography in places where it would otherwise be impossible for lack of sufficient light. Prior to the introduction of the plaintiff's device, the only means generally available for taking such photographs were so-called flashlight powders of various types, flash sheets, and flash cartridges. These methods were all similar in that they involved burning a highly explosive chemical in free air in order to get the required light. Their use was unsatisfactory for several obvious reasons. There was a substantial danger from fire in their use indoors, they gave off a quantity of unpleasant smoke, and they were dangerous both to the user and to bystanders because of their explosive characteristics. As a result of these defects, they were generally unsuitable for amateur use and could be used professionally only to a limited extent. Since the introduction of the plaintiff's lamp, the use of flash powders has become obsolete. The use of flash lamps has made possible professional photography in many places where the use of flash powders had been either impracticable or absolutely prohibited, and has opened a complete new field · for amateur photography. The use of flash lamps by amateur photographers has now reached such proportions that national advertising is done by the Eastman Kodak Company in order to promote sales of photographic materials manufactured by it.

The plaintiff's invention consists of a loose filling of aluminum or other foil inside an ordinary lamp bulb containing oxygen at a pressure approximately one-fifth that of the atmosphere. The foil is ignited by means of a small wire of sufficient resistance to burn out in oxygen at very low voltages and fitted with a fulminating composition to facilitate combustion of the foil. The igniting wire is mounted approximately in the center of the lamp, and is connected to an ordinary lamp socket base at the small end of the lamp by means of wires brought out through the seal in the neck.

·The following claims are in suit:

"1. A flash lamp particularly for photographic purposes, · comprising a closed

---

[1] The basis for joinder of defendants is discussed infra.

gas-tight transparent bulb containing an oxygen gas; and a foil in the bulb adapted to emit light upon combustion thereof with the oxygen and disposed within effective range of an ignition device."

"4. A flash lamp particularly for photographic purposes, comprising a closed gas-tight bulb having a gas therein; an igniting device in said bulb; and a foil in the bulb adapted to emit light upon combustion thereof with the gas and disposed within effective range of the ignition device."

"8. A flash lamp particularly for photographic purposes, comprising a closed gas-tight transparent bulb containing an oxygen gas, and a loose filling of foil in the bulb adapted to emit light upon combustion thereof with the oxygen and disposed within effective range of an ignition device."

"9. A flash lamp particularly for photographic purposes, comprising a closed gas-tight bulb having a gas therein; an ignition device in said bulb; and a loose filling of foil in the bulb adapted to emit light upon combustion thereof with the gas and disposed within effective range of the ignition device."

"10. A flash lamp particularly for photographic purposes, comprising a closed gas-tight transparent bulb containing a gas at a pressure substantially below atmospheric and a loose filling of foil in the bulb adapted to emit light upon combustion thereof with said gas and disposed within effective range of an ignition device, the thinness of the foil being such that the foil will burn with lightning speed."

In order to show invalidity of the patent in suit, the defendants rely principally upon two prior disclosures. One is the invention of Vierkotter, represented by United States patent No. 1,625,108. The other is two articles by First Lieutenant A. D. Kiesling of the German Navy, published in Berlin in 1898 and in 1900, respectively, in a magazine entitled "Photographische Mitteilungen."

The Vierkotter invention was an attempt to burn ordinary flash powder inside a lamp bulb. In order to prevent an explosion which would break the lamp, the powder was mixed with an oxygen producing substance, and burned virtually in a vacuum. Under such circumstances, explosion of the lamp did not occur, because there was nothing to expand inside the lamp. Since the accidental introduction of air made the device dangerous, it was necessary to include a safety contrivance designed to make it impossible to ignite the lamp should the vacuum become incomplete. In 1929, Hauser & Co. in Augsburg, Germany, were the owners of the Vierkotter patent. Apparently this could not be made into a marketable article, because of the danger of explosions which had not been wholly obviated. Early in that year, Ostermeier, the present patentee, a consulting engineer and physicist, was employed to develop something more practicable. He found that by using aluminum foil in a bulb filled with oxygen at reduced pressure, a lamp could be produced inexpensively which would not explode. Such a lamp did not have the weakness of the Vierkotter device, because, if air accidentally leaked into it, the foil simply did not burn or burned so slowly that no explosion occurred. He found that, if the foil was burned in oxygen at atmospheric pressure, some of the lamps exploded.

In his 1898 article, Kiesling, who was an amateur and primarily interested in advanced amateur photography, described a homemade lamp, in which a magnesium band is burned in oxygen. The principal objection to this lamp was that it required a time exposure of about three seconds. In the 1900 article, Kiesling described an improvement, in which he burned aluminum leaf in oxygen. As described by Kiesling, the lamp consisted of a bottle constructed with a relatively long neck, which was filled with oxygen. Into this oxygen-filled bottle, Kiesling placed several sheets of aluminum leaf and an igniting wire of thin iron designed to burn out upon application of an electric current. The device consisted first of a metal collar designed to fit around the top of the bottle, and held by two loosely fitting carriers extending into the bottle, these carriers apparently being nothing more than a pair of stiff wires. Upon the collar rested a lid of metal, through which passed the wires leading to the igniting wire. Also resting on the metal collar, but fitted to it somewhat (just how much does not clearly appear), was a metal cylinder, serving as a sort of chimney. Thus, the device contained a type of safety valve to relieve the pressure created by the rapidly expanding gas within the bottle at the time of the flash, together with a chimney designed to catch the sparks thereby blown out of the bottle.

At the trial, each side produced as an exhibit a lamp made in accordance with its understanding of the teachings of Kiesling. These lamps differed radically as to size of both the bottle and the protective parts. The defendants used a bottle rather larger than an ordinary milk bottle, with the associated parts constructed of heavy metal, and tight-fitting joints. The plaintiff's version, on the other hand, used a flask of approximately 400 cc capacity, or only slightly larger than an ordinary light bulb. The defendants apparently succeeded in constructing a lamp which would not ordinarily explode even when tightly corked, while the plaintiff was equally successful in producing a lamp which would explode frequently, despite the use of Kiesling's safety device. These exhibits representing the respective versions of the parties as to what Kiesling taught were constructed after and conceivably in the light of the Ostermeier invention. The exhibits differ from each other in appearance and in the way in which they work, and I have no adequate means of knowing which of them more nearly represents Kiesling's conception.

To return to the later Kiesling article. It teaches that aluminum foil, when burned in oxygen, produces a sudden light suitable for photographic purposes. It does not teach, however, how to burn aluminum inside a relatively small sealed container such as an electric light bulb without having difficulty with explosions. It is important for what it does not disclose. In some of its aspects the tendency of the Kiesling article is to lead one away from the invention protected by the patent in suit. Implicit in the Kiesling article is the teaching that metal foil cannot be ignited safely in a closed gas-tight container. Kiesling's contrivance to "catch the sparks bursting out of the bottle opening" is inconsistent with the view that he thought it possible to use a gas-tight container. Ostermeier's invention showed that this may be done in a lamp containing oxygen at less than atmospheric pressure. But the Vierkotter patent taught that flash materials could be burned inside an electric light bulb if burned virtually in a vacuum.

Ostermeier's invention described in the patent in suit consisted chiefly or largely in combining elements disclosed in the Vierkotter patent and the Kiesling articles so as to produce a practical lamp which

has displaced all the older means for obtaining such a flash as is useful in photography. Ostermeier discovered that aluminum foil could be safely burned in an electric light bulb by reducing the pressure of the oxygen to approximately one-fifth atmospheric, and that such a lamp had a great advantage over Vierkotter in that, if air leaked into the bulb, there would be little or no flash and hence no danger. In other words, the principles were combined in such a way as to produce a new result; that is, a method by which flash materials of sufficient quantity to produce a useful flash could be burned inside a small sealed glass vessel such as an electric light bulb.

 It is well settled that a new combination of elements, old in themselves, but which produces a new and useful result, may amount to invention if the combination required more than the ordinary ability of one skilled in the art. Expanded Metal Company v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Rubber Tire Wheel Company v. Goodyear Tire & Rubber Company, 232 U.S. 413, 34 S.Ct. 403, 58 L.Ed. 663; Diamond Rubber Company v. Consolidated Tire Company, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527. I am of the opinion, and upon all the facts before me I find, that the combination presented to this court required more than the skill of the ordinary worker skilled in the art to perfect. In so far as the question is doubtful, where the combination is directed towards a want felt for some time in the field and immediately meets with great success in filling that want, it may be considered as evidence of invention. Webster Loom Company v. Higgins, 105 U.S. 580, 26 L.Ed. 1177; Patent Royalties Corporation v. Land O'-Lakes Creameries, Inc., 2 Cir., 89 F.2d 624, 627. In the latter case, in holding a patent for an egg crate valid, all of whose elements were old, Judge Learned Hand said: "So it appears that the elements of the combination had been available for many years; that the art had always needed a good egg carrier; that a substantial number of persons had tried to make one; and that the patent had quick and almost universal acceptance. That makes the classical picture of an invention, unless there are some contradictory factors."

In the present case, the need had existed for nearly half a century, without being satisfactorily solved. Nearly thirty

years elapsed after the Kiesling disclosures, during which time no successful attempt was made to convert what he disclosed into a workable lamp. Under these circumstances, the sudden and universal acceptance of the present invention must be considered as strong evidence of invention. For other cases dealing with commercial success as evidence of invention in doubtful cases, see Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Warren Telechron Company v. Waltham Watch Company, 1 Cir., 91 F.2d 472; A. S. Boyle Company v. Harris-Thomas Company, D.C., 18 F.Supp. 177. The case at bar is clearly distinguishable from cases such as Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005, cited by the defendants, where there was a plain absence of invention, and where the want was no sooner felt than it was satisfied.

■ I conclude that the patent in suit is not invalid by reason either of anticipation or lack of patentable invention, and proceed to consider the questions raised by the defendants as to the validity of the Patent Office proceedings resulting in the reissue.

■ The defendants contend that the present reissue patent is invalid because there was no evidence before the Commissioner of Patents of such accident, inadvertence, or mistake as to entitle the plaintiff to a reissue under U.S.C., tit. 35, § 64, 35 U.S. C.A. § 64.

In his affidavit accompanying the petition for a reissue, the inventor states:

"He verily believes that his patent No. 1,776,637, granted September 23, 1930, is inoperative in part, for the reason that the specification thereof is defective and that such defect consists particularly in the fact that it contains no claims such as claims 8, 9, and 10, of this reissue application.

"The failure of the patent to contain such claims arose through inadvertence, accident or mistake and without any fraudulent or deceptive intent upon the part of applicant.

"The error constituting the inadvertence, accident or mistake consisted in the failure to draw and present such claims in the application for said patent.

"Such error arose in the following manner: The applicant is a German residing in Germany, and is not familiar with the practice governing the preparation and prosecution of applications for Letters Patent of the United States or with the formulation and interpretation of the claims in Letters Patent of the United States. He supposed the aforementioned Letters Patent as granted did fully and adequately cover his invention until he was advised by the assignee of his patent that claims such as claims 8, 9, and 10 were necessary in order that the invention might be fully and certainly protected."

It is the contention of the defendants that this statement shows only that the mistake consisted in failure to include the claims now sought, and that such a mistake is not sufficient ground for the reissue of a patent under the statute. In support of its contention, the defendants rely primarily upon two cases, Union Switch & Signal Company v. Louisville Frog, Switch & Signal Co., 6 Cir., 73 F. 2d 550, and Firestone Tire & Rubber Company v. United States Rubber Company, 6 Cir., 79 F.2d 948. I do not regard either of these cases as authority for the proposition advanced by the defendants. In each of them, the oath merely alleged that the failure to include the desired claims in the original petition arose through inadvertence, accident, or mistake. In neither case were there any supporting averments whatsoever. Furthermore, in each case it appeared conclusively from the face of the record that the failure to include the particular claims in question did not arise through mistake, since they were merely claims which had been rejected earlier. No such situation is here presented.

■ That a patent may be reissued for the purpose of correcting claims cannot be disputed at this time. Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658; American Automotoneer Company v. Porter, 6 Cir., 232 F. 456. Moreover, as stated in the former case, "This court will not review the decision of the Commissioner upon the question of inadvertence, accident or mistake, unless the matter is manifest from the record. * * *" See, to the same effect, Hobbs v. Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586. Furthermore, the Commissioner is not limited to matters found in the oath for his determination. As said in Fehr v. Activated Sludge, 7 Cir., 84 F.2d 948, at page 950: "The statute does not define the words 'accident,' 'inadvertence' and 'mistake,' and

perhaps that was not necessary on account of their general lack of ambiguity, as here used. It is clear, however, that when relied upon as a basis for a reissue, the accident, inadvertence or mistake must be real and in good faith and not simulated. To establish such basis, the statute does not require an oath to support it, and the Commissioner in passing upon the petition may supplement its disclosures with any pertinent information gained from the records in his office."

■ It is further contended by the defendants that in the present case rights of the defendants intervened prior to the reissue. As to this contention it is sufficient to say that, since the added claims are narrowed and not broadened, the doctrine of intervening rights is inapplicable. "Intervening rights can be acquired only in connection with a broadened reissue; the doctrine is not applicable to a narrowed reissue." Walker on Patents, Dellar Ed. 1937, p. 1373, 6th Ed., pp. 373, 374. See, also, Babcock & Wilcox Company v. Springfield Boiler Company, 2 Cir., 16 F. 2d 964, 970; Ball & Roller Bearing Company v. Sanford Co., 2 Cir., 297 F. 163, 165.

### Basis for Joinder of Defendants

■ As heretofore stated, the defendants are Munder Electrical Company, Charles F. Munder, receiver of Munder Electrical Company, Charles F. Munder, Robert V. Munder, and Rushworth I. Munder. The individual defendants Robert V. Munder and Rushworth I. Munder own all the stock in the Munder Electrical Company, except for some common stock owned by one Gilliatt. Robert V. Munder "is or was" (italics added) the president of the company, and Rushworth I. Munder is the treasurer. Charles F. Munder, in addition to being receiver, was the financial backer of the company.

The Munder Electrical Company and Charles F. Munder, receiver, are properly named defendants, because before the receivership the corporation infringed the patent in suit and thereafter the Receiver infringed it. Charles F. Munder, as an individual, is properly named as a defendant for the reason that for a tort committed by him as receiver he is personally liable. Rushworth I. Munder, who admitted that he really conducted the business in the place and stead of the receiver, his father, is a proper defendant, and may not escape liability for his tort because he was acting in a representative capacity.

■ As to Robert V. Munder, the evidence shows that in 1932 he was the president of the corporate defendant. The plaintiff in its brief says that "Robert V. Munder is or was the President of the company." This is true, but the evidence is insufficient to show that he was president after the year 1932 or to show that he directed or was so actively concerned as to make him liable for the infringement. In arriving at this conclusion, I am not unmindful of National Cash-Register Company v. Leland, 1 Cir., 94 F. 502, which is cited on neither of the briefs, or of the cases cited in the briefs including: General Electric Company v. Wabash Appliance Corporation et al., 93 F.2d 671, decided by the Circuit Court of Appeals for the Second Circuit on January 3, 1938; Claude Neon Lights v. American Neon Light Corporation, 2 Cir., 39 F.2d 548, 550; Schiff v. Hammond Clock Company, 7 Cir., 69 F.2d 742, 745; Electrical Products Corporation v. Neale, Inc., et al., 48 F.2d 824, 837, D. C.S.D.Cal.; Denominational Envelope Company et al. v. Duplex Envelope Company, 4 Cir., 80 F.2d 186, 194. The naked fact that Robert V. Munder was president of the corporate defendant in and prior to 1932, and a stockholder, added to the fact that the corporation was then infringing, is insufficient of itself to make him liable for such infringement. See Telling v. Bellows-Claude Neon Company, 6 Cir., 77 F.2d 584; D'Arcy Spring Company v. Marshall Ventilated Mattress Company, 6 Cir., 259 F. 236, 242.

■ The defendants urge that the suit cannot be maintained against the receiver, as such, without first obtaining leave of court to proceed against him. The defendant's brief says: "While it is well understood that a patent owner may sue a company in receivership for the infringement by that company of the plaintiff's patent (Hupfeld v. Automaton Piano Co., C.C., 66 F. 788, 789), such a suit is permitted merely to liquidate whatever claim the plaintiff may have." The case cited was in fact against the piano company and the receiver, and the court said: "The general rule undoubtedly is that a court will not entertain jurisdiction of a suit against a receiver appointed by another

court until the appointing court has given its consent that he be sued. This rule rests on principles of comity, and is considered essential for the protection of the receiver as an officer of the court appointing him against unnecessary and expensive litigation touching controversies wherein it may often be within the power of the appointing court to give ample relief to any person aggrieved. But the rule has its qualifications, and the case at bar does not fall within it. This suit is one under the federal laws, involving questions as to the validity and infringement of United States letters patent, which the state courts have no jurisdiction to determine. Continental Store Service Co. v. Clark, 100 N.Y. 365, 370, 3 N.E. 335. The federal courts cannot assent to the proposition that they have no jurisdiction, without leave of the state courts first obtained, to enjoin individuals, even though they be officers of state courts, from infringing upon the rights of the owner of a patent. To do so would be to abdicate functions which, under the federal constitution, are confided to them, and to them exclusively, by the federal laws. Such a refusal would leave it within the power of the state courts to exclude the holder of rights granted to him by the United States from the only tribunals which have jurisdiction to vindicate those rights. The reasoning in Barron v. Burnside, 121 U.S. 186, 7 S.Ct. 931, [30 L.Ed. 915], and other similar authorities applies perfectly to such a case as this."

This suit can be maintained against all defendants except Robert V. Munder. The extent of their liability for damages or profits is reserved for future determination.

■ The plaintiff adduced no evidence as to compliance with the statute as to patent markings, on the theory that proof of such matters might properly be left for an accounting if one should be ordered. This was proper. Bassick Manufacturing Company v. Adams Grease Gun Corporation, 2 Cir., 52 F.2d 36; Aronson v. Toy Devices, Inc., 3 Cir., 1 F.2d 91.

As to the defendant Robert V. Munder, the bill is to be dismissed.

The claims in suit are valid and infringed, and, as against all the defendants except Robert V. Munder, the plaintiff is entitled to an accounting and to the injunctive relief sought.